STATE OF NORTH CAROLINA v. MELVIN JACKSON

No. 7728SC892

(Filed 18 April 1978)

1. **Homicide § 28.8— defense of accident—instructions**

    The trial court's instructions on accidental homicide were sufficient and not misleading.

2. **Homicide § 11— defense of accident—denial of guilt**

    The contention of a defendant charged with homicide that a killing was accidental is not an affirmative defense, but rather a denial of guilt by denying the element of intent.

3. **Homicide § 28.8— defense of accident—application of law to facts**

    The trial judge sufficiently applied the law of accident to the facts in a first degree murder prosecution where he admonished the jury that if a reasonable doubt existed as to one or more of the elements of the crime charged and lesser included offenses a not guilty verdict would be required, and the charge as a whole clearly placed the burden upon the State to prove there was no accidental killing.

APPEAL by defendant from *Long, Judge*. Judgment entered 24 August 1977 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 28 February 1978.

Defendant was indicted for first-degree murder. Upon his plea of not guilty, the jury returned a verdict of guilty of voluntary manslaughter. From judgment sentencing him to imprisonment for a term of not less than fourteen years nor more than eighteen years, defendant appeals.

State's evidence tended to show that on 14 March 1977 Officer Kenneth Waldroup, a Buncombe County Deputy Sheriff, answered a call to the apartment of Joyce Peak at 9:53 p.m. accompanied by off-duty police officer Larry Phillips. When they arrived at the residence, the defendant, Melvin Jackson, was standing in the yard. After being advised of his rights, he said: "I shot the man. He was coming on me." The officers entered the apartment to find Winston Lordman at the foot of the stairs apparently dead from what later testimony revealed to be a shotgun wound to the upper left chest. There was blood on the stairs and on the body. No weapon was found about the body.

Evidence for the State further tended to show that a small child on the scene handed Officer Phillips a twelve-gauge shotgun and that a box containing twelve-gauge shotgun shells was found on a bed in an upstairs bedroom by Officer Waldroup. The opinion of an examining pathologist was that Lordman was highly intoxicated at the time of death with a blood alcohol content of .32% and that the wound causing death was a shotgun wound. It was the opinion of the officers that the defendant had not been drinking when they observed him at the scene.

Evidence for the defendant tended to show that Lordman had lived with Joyce Peak for about six and a half years. About one month prior to 14 March 1977, she made him leave. Later, when the defendant started dating Joyce Peak, Lordman often came to her apartment while both were there. Upon arrival he would beat and kick on the door until admitted. Upon admission Lordman several times threatened to kill defendant and Peak if they continued to date. Lordman was much bigger than the defendant and, defendant, to prevent attack, had held a shotgun on him several times.

Further evidence for the defendant tended to show that on 14 March 1977 Lordman came to the apartment while both defendant and Peak were there and banged on the door. They decided to admit him hoping to have a reasonable discussion. Soon, however, defendant and Lordman were engaged in an argument. Lordman began pushing defendant's chest, putting his finger in defendant's face, and attempted to hit him. He also renewed his threat to kill them. Lordman finally went into the kitchen, at the request of Joyce Peak, to talk with her. He insisted that she ask the defendant to leave, but she refused and asked him to leave instead. Lordman refused to leave but the defendant, to avoid further trouble, agreed to leave and went upstairs to get his clothes and shotgun. Lordman started up the stairs making threats as defendant started down with his things. Joyce Peak and her son attempted to stop Lordman but he pulled away. Defendant, on the stairs, threw his clothes down and pointed his shotgun at Lordman. He then told Lordman to leave him alone, and that he did not want to hurt him. Lordman continued up the stairs toward the defendant. The defendant, backing up the steps, fell backward on the steps and the shotgun accidentally fired striking Lordman in the chest.

Additional evidence for the defendant tended to show that Lordman had a reputation for being mean and violent when drinking. Lordman had threatened him on a number of occasions and the defendant knew him to be mean and violent when drinking. Lordman had been drinking heavily on the night of 14 March 1977. The defendant told officers on the scene that night that the shooting was an accident.

*Attorney General Edmisten by Associate Attorney Rudolph A. Ashton III for the State.*

*Peter L. Roda, Public Defender for the Twenty-Eighth Judicial District, for defendant appellant.*

MITCHELL, Judge.

The sole question presented by the defendant is whether the court erred in its instruction to the jury regarding the law of accidental homicide and in its final mandate to the jury which did not specifically mention accidental homicide.

[1] Defendant first contends that the court's definition of accident was so condensed that it was probably overlooked by the jury since the other "possible crimes involved were defined at great length as was the defense of self-defense." Defendant further argues that "[t]he court's reference to accident was such that a juror hearing the charge would hardly realize that an accident would excuse the defendant." We do not agree.

The language used by the trial court in the case *sub judice* is as follows:

Now, members of the jury, I will give to you the law of accident, which is very simple. If Lordman died by accident or misadventure, that is, without wrongful purpose of criminal negligence on the part of the defendant, the defendant would not be guilty. The burden of proving accident is not on the defendant. His assertion of accident is merely a denial that he has committed any crime. The burden remains on the State to prove the defendant's guilt beyond a reasonable doubt.

This Court has recently approved an instruction on accidental homicide virtually identical to that used here by the trial court.

*State v. Collins*, 29 N.C. App. 478, 224 S.E. 2d 647 (1976); *accord*, *State v. McLamb*, 20 N.C. App. 164, 200 S.E. 2d 838 (1973). We find this to be a proper statement of the law and, therefore, sufficient and not misleading.

Defendant next contends that when the trial judge applied the law to the facts no mention was made of accident. He argues that accident was his main defense to the charges against him and that the omission was a matter of law and, therefore, unaffected by trial counsel's failure to object and request further instructions. We do not agree.

[2, 3] The contention of a defendant charged with homicide that a killing was accidental is not an affirmative defense, but rather a denial of guilt by denying the element of intent. *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969); 6 Strong, N.C. Index 3d, Homicide, § 11, p. 549 and cases cited therein. All portions of a trial court's charge to the jury must be construed contextually. *State v. Utley*, 223 N.C. 39, 25 S.E. 2d 195 (1943). 1 Strong, N.C. Index 3d, Appeal and Error, § 50, p. 317. Upon a defendant's assertion that a killing was an accident, the denial of guilt applies to all the charges against the defendant regarding the transaction in question. *State v. McLamb*, 20 N.C. App. 164, 200 S.E. 2d 838 (1973). Therefore, we think and so hold that a sufficient charge was made by the trial court in its final mandate as to first-degree murder, all lesser included offenses, and to self-defense. It admonished the jury that if a reasonable doubt existed as to one or more of the elements a not guilty verdict would be required. We think that this admonition was a sufficient application of the law to the facts here in regard to accident and that the jury was not misled thereby. The trial court clearly put the burden upon the State to prove there was no accidental killing. We also point out that the trial court specifically asked counsel for the defendant if he requested any further instructions to which he replied in the negative.

For the reasons stated, we find

No error.

Judges MORRIS and CLARK concur.