STATE OF NORTH CAROLINA v. MARILYN LOUISE WHITE

No. 9026SC1257

(Filed 1 October 1991)

1. **Narcotics § 4.7 (NCI3d) — trafficking by possession — instruction on felonious possession not required**

  The trial court in a prosecution for trafficking in cocaine by possession did not err in refusing to instruct the jury on the lesser included offense of felonious possession of cocaine where the evidence tended to show that more than 28 grams of a white powder containing cocaine were transported in defendant's vehicle, an additional 3.5 grams of a white powder containing cocaine were found in defendant's glove under the front seat, defendant denied that she had knowledge of cocaine in her vehicle, and defendant does not deny that the State presented positive and uncontroverted evidence on each element of trafficking in cocaine by possession.

  **Am Jur 2d, Drugs, Narcotics, and Poisons § 47.5.**

2. **Narcotics § 3.3 (NCI3d) — expert testimony — substance "could" contain cocaine**

  The trial court did not err in permitting a chemical analyst to state his opinion that white powder found in defendant's glove "could" contain cocaine based on a preliminary color test.

  **Am Jur 2d, Drugs, Narcotics, and Poisons § 46.**

APPEAL by defendant from judgment entered 13 July 1990 by *Judge Shirley L. Fulton* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 23 September 1991.

STATE v. WHITE

[104 N.C. App. 165 (1991)]

*Lacy H. Thornburg, Attorney General, by Kathryn Jones Cooper, Assistant Attorney General, for the State.*

*Isabel Scott Day, Public Defender, by Sue A. Berry, Assistant Public Defender, for defendant-appellant.*

GREENE, Judge.

Defendant appeals from a judgment entered 13 July 1990, which judgment was based upon a jury verdict convicting defendant of two violations of N.C.G.S. § 90-95(h)(3) (1990), trafficking in cocaine by possession and trafficking in cocaine by transportation.

The State's evidence at trial tends to show the following: At approximately 7:30 p.m. on 2 January 1990, Paul Levins (Levins), a Charlotte police officer working in an undercover capacity, met Clara Broadnax (Broadnax) in a shopping center parking lot to purchase two ounces of cocaine from her. Levins waited in the parking lot about five minutes before Broadnax arrived. Broadnax arrived at the parking lot in a pickup truck driven by the defendant. Broadnax exited the truck, approached Levins' car, leaned into the car, and showed Levins two bags of a white, powder substance wrapped in a Kleenex. Levins examined the substance and handed Broadnax $2,200.00. Because the agreed price for the substance was $1,250.00 per ounce, Levins told Broadnax that he had to get the rest of the money out of the trunk area of his car. Broadnax took the $2,200.00, got into the passenger seat of the truck, and waited for Levins. Levins then opened the hatch of his car, a signal for two "Take Down Units" to approach and assist in making the arrests. With blue lights flashing, the two police cars arrived. As they arrived, Levins noticed the defendant attempt to start the truck while it was already running. The defendant then attempted to back out of the parking space, but by that time she was surrounded. As the other officers approached the truck, Levins noticed the defendant put something under her seat. Levins searched under the defendant's seat and found a cellophane package containing a white, powder substance inside a black glove. The officers arrested both defendant and Broadnax.

Broadnax testified that at approximately 7:00 p.m. on 2 January 1990, she was about to leave her house to meet Levins when the defendant arrived. Broadnax told the defendant that she was going to deliver two ounces of cocaine to someone who had called for it. Defendant said she would go with Broadnax. Because Broadnax's

car did not have heat, the defendant agreed to drive her truck. For taking Broadnax to meet Levins, Broadnax agreed to give some of the cocaine to the defendant. While driving to the parking lot, Broadnax took some cocaine out of each of the two separate bags containing cocaine and put it in the wrapper of a cigarette pack. Defendant then put the package inside her navy blue or black glove.

Tony Aldridge, a chemical analyst in the chemistry section of the Charlotte Mecklenburg Crime Laboratory, testified that he examined the three packages of white, powder substance obtained by Levins. In his opinion, one of the two bags sold to Levins contained "24.1 grams of a white powder which contained cocaine," and the other bag sold to Levins contained "23.9 grams of a white powder and that white powder did contain cocaine." He performed only a "simple preliminary color test" on the cellophane package found in the black glove and from that test determined that the package contained 5.3 grams of a white powder which could contain cocaine. He testified, "It does not have to contain cocaine but it could."

Defendant presented evidence. She testified that at approximately 5:30 p.m. on 2 January 1990, she picked up her son at the nursery. She stayed at the nursery for a while to talk to some of the other parents. When her son said that he was hungry, the defendant left the nursery and proceeded to Hardee's. While at Hardee's, the defendant saw Broadnax. Broadnax told the defendant that she was having problems with her car, she needed to go meet a man named Carl, and she would pay the defendant $10.00 to take her to meet him. Defendant agreed and took Broadnax back to Broadnax's house. While there, Broadnax told the defendant that she had to meet Carl to pick up some money. Defendant remained outside in her truck while Broadnax went inside. Broadnax returned from her house with a change purse and a Kleenex box. Defendant and Broadnax then drove to the parking lot. Broadnax did not see Carl when they arrived, and because the defendant and her son had not eaten at Hardee's, the defendant went to a pizza restaurant in the shopping center and ordered a pizza. They got the pizza and began eating it. A few minutes later a car pulled up to them, and Broadnax said, "I think that is them." Defendant drove the truck over to meet the car, and Broadnax got out of the truck to talk with the man. Broadnax returned to the truck and the defendant asked, "So, you ready to go?" Broadnax responded, "No, he got to get some more money out

of his trunk." Defendant had the truck running, shifted in reverse, and ready to go. At that point, the police surrounded and arrested the defendant and Broadnax. Defendant testified that she did not know that Broadnax had cocaine with her when she got into the defendant's truck after taking Broadnax to her house, that to her knowledge, she has never had cocaine in her truck, that she did not know that she was taking Broadnax to transact a sale of cocaine, and that the last time she saw her black glove, it was in the glove compartment. In fact, the defendant introduced into evidence a note written by Broadnax which stated, "To Whom it May Concern: Marilyn White had no knowledge of what was going on. She went into the Pizza Hut to pick up the food that was ordered."

The issues are (I) whether the defendant is entitled to the lesser included offense instruction of felonious possession of cocaine in the truck where the defendant does not deny that the State presented positive and uncontroverted evidence on each element of the crime charged but merely denies any knowledge of the cocaine in her truck; and (II) whether the trial court erred in overruling the defendant's general objection to the prosecutor's question of a chemical analyst asking the witness to give his opinion of the contents of a package upon which contents only a preliminary color test had been conducted.

I

[1] For a conviction of felonious possession of cocaine, the State is required to prove that the defendant knowingly possessed cocaine. N.C.G.S. § 90-95(d)(2) (1990); *State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985) (felonious possession of controlled substance requires knowing possession). "To prove the offense of trafficking in cocaine by possession the State must show: 1) [knowing] possession of cocaine and 2) that the amount possessed was 28 grams or more." *State v. Mebane*, 101 N.C. App. 119, 123, 398 S.E.2d 672, 675 (1990); N.C.G.S. § 90-95(h)(3); *Weldon*, 314 N.C. at 403, 333 S.E.2d at 702. Felonious possession of cocaine is a lesser included offense of trafficking in cocaine by possession. *State v. Siler*, 310 N.C. 731, 733, 314 S.E.2d 547, 549 (1984); *State v. Brown*, 101 N.C. App. 71, 79, 398 S.E.2d 905, 909-10 (1990); *State v. Winslow*, 97 N.C. App. 551, 557, 389 S.E.2d 436, 440 (1990). With regard to lesser included offenses, our Supreme Court has stated:

A trial court must submit to the jury a lesser included offense when and only when there is evidence from which the jury could find that the defendant committed the lesser included offense. . . . When the State's evidence is positive as to each element of the crime charged and there is no conflicting evidence relating to any element, submission of a lesser included offense is not required. . . . Mere possibility of the jury's piecemeal acceptance of the State's evidence will not support the submission of a lesser included offense. . . . Thus, mere denial of the charges by the defendant does not require submission of a lesser included offense.

*State v. Maness*, 321 N.C. 454, 461, 364 S.E.2d 349, 353 (1988) (citations omitted).

Relying upon *Siler*, the defendant argues that the trial court erred in denying the defendant's request to instruct the jury on felonious possession of cocaine as a lesser included offense of trafficking in cocaine by possession. The defendant's reliance upon *Siler* is misplaced. Although the defendant in *Siler* denied knowing about 300 grams of cocaine found in the trunk of a car in which he had been a passenger, he admitted that he had knowledge of a smaller amount of cocaine also found in a separate bag inside that car. From this evidence the jury could have determined that the defendant possessed an amount of cocaine less than the amount required for conviction of trafficking in cocaine by possession, and therefore the defendant was entitled to an instruction on the lesser included offense. *Id.* at 733, 314 S.E.2d at 549. Here, however, the defendant does not deny that the State presented positive and uncontroverted evidence on each element of trafficking in cocaine by possession. Accordingly, we do not address the issue of whether the State presented such evidence on each element of the charged crime. *See State v. Thorpe*, 326 N.C. 451, 454-55, 390 S.E.2d 311, 313-14 (1990) (constructive possession); *State v. Davis*, 325 N.C. 693, 697-99, 386 S.E.2d 187, 190-91 (1989) (constructive possession); *State v. Baize*, 71 N.C. App. 521, 528-30, 323 S.E.2d 36, 41-42 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E.2d 34 (1985) (concert of action and constructive possession). Instead, the defendant argues that her denial of any knowledge of the cocaine in her truck is sufficient to require the submission of the lesser included offense to the jury. We disagree. The mere denial of the charges by the defendant, where there is positive evidence on each element of the crime charged and where there is no conflicting evidence

relating to any element, does not require submission of a lesser included offense to the jury. *Maness*, 321 N.C. at 461, 364 S.E.2d at 353.

## II

[2]    On direct examination, Aldridge was asked if he had an opinion as to the contents of the cellophane package found in the black glove under the defendant's seat. He said that he had formed only a preliminary opinion as to what the package contained. The prosecutor asked him for his preliminary opinion, and the defendant's attorney generally objected. The trial court overruled the general objection and allowed Aldridge to testify that based upon a positive response to the preliminary testing, the package "could" contain cocaine.

"[A] general objection, if overruled, is ordinarily not effective on appeal." *State v. Hamilton*, 77 N.C. App. 506, 509, 335 S.E.2d 506, 508 (1985), *disc. rev. denied*, 315 N.C. 593, 341 S.E.2d 33 (1986). "This rule serves to facilitate proper rulings and to enable opposing counsel to take proper corrective measures to avoid retrial." *State v. Catoe*, 78 N.C. App. 167, 168, 336 S.E.2d 691, 692 (1985), *disc. rev. denied*, 316 N.C. 380, 344 S.E.2d 1 (1986). Under Rule 10(b)(1) of the Rules of Appellate Procedure, however, "to preserve a question for appellate review, a party must have presented to the trial court a timely . . . objection . . . stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." *See also State v. Ward*, 301 N.C. 469, 477, 272 S.E.2d 84, 89 (1980); N.C.G.S. § 8C-1, Rule 103(a)(1) (1988); 1 H. Brandis, Brandis on North Carolina Evidence § 27 (3d ed. 1988). Although the defendant generally objected to the evidence, the ground for the objection is readily apparent from the context of the direct examination: The chemical analyst's opinion that the white, powder substance "could" contain cocaine is speculative because a complete chemical analysis had not been performed and therefore should not have been admitted into evidence. Accordingly, we will address the defendant's argument that such an opinion should be inadmissible as speculation because it was based on a preliminary opinion and the identification of the substance had not been completed. We do not address other potential issues regarding the admissibility of the analyst's opinion because those issues have not been raised. *See State v. Huang*, 99 N.C. App. 658, 663, 394 S.E.2d 279, 282-83, *disc. rev. denied*, 327 N.C. 639,

399 S.E.2d 127 (1990) (relevant rules for admissibility of expert testimony).

Under N.C.G.S. § 8C-1, Rule 702 (1988), "[t]he test for admissibility [of an expert's opinion] is whether the jury can receive 'appreciable help' from the expert witness." *State v. Knox*, 78 N.C. App. 493, 495, 337 S.E.2d 154, 156 (1985) (citation omitted). "While baseless speculation can never·'assist' the jury under Rule 702," *Cherry v. Harrell*, 84 N.C. App. 598, 605, 353 S.E.2d 433, 438, *disc. rev. denied*, 320 N.C. 167, 358 S.E.2d 49 (1987), an expert's opinion need not be positive to be admissible. *State v. Robinson*, 310 N.C. 530, 537-38, 313 S.E.2d 571, 576-77 (1984) (evidence that "male sex organ could" have penetrated vagina admissible though use of "could" significantly weaker than "probably"); *State v. Ward*, 300 N.C. 150, 153-54, 266 S.E.2d 581, 583-84 (1980) (firearms expert allowed to testify that bullet "could have" been fired from defendant's gun); *State v. Benjamin*, 83 N.C. App. 318, 319-20, 349 S.E.2d 878, 879 (1986) (opinion concerning how victim "could have gotten" gunshot residue on his hands admissible). If the expert has a positive opinion, however, the expert is allowed to express that opinion. *Ward*, 300 N.C. at 153-54, 266 S.E.2d at 584. That an expert's "could" or "might" opinion may have "little probative value goes to the question of its weight and sufficiency, not its admissibility." *Id.* at 154, 266 S.E.2d at 584.

Though not a positive opinion that the substance in the cellophane package contained cocaine, the analyst's opinion that the substance "could" contain cocaine was properly admissible. The opinion was not based upon mere speculation, instead it was based upon a preliminary color test with a positive result. *See State v. McDougall*, 308 N.C. 1, 10, 301 S.E.2d 308, 314, *cert. denied*, 464 U.S. 865, 78 L.Ed.2d 173 (1983) (trial court admitted results of initial screening test of blood showing positive reaction for cocaine). That the analyst's opinion was based upon a positive preliminary test result and not upon a complete analysis goes not to the admissibility of the opinion, but to its weight and sufficiency on an issue. *See Hinson v. National Starch & Chem. Corp.*, 99 N.C. App. 198, 201, 392 S.E.2d 657, 659 (1990) (addressing sufficiency of evidence not threshold question of admissibility of 'might or could' opinion evidence).

We have reviewed the defendant's remaining assignments of error and find them to be without merit.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.