STATE OF NORTH CAROLINA, Plaintiff,
v.
ERIC VALDEZ, Defendant.
No. COA08-820
Court of Appeals of North Carolina
Filed May 5, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Mark A. Davis, for the State.
Paul F. Herzog, for defendant-appellant.
STROUD, Judge.
Defendant appeals from judgments entered pursuant to jury verdicts finding him guilty of (1) first degree murder on the basis of malice, premeditation and deliberation and under the felongy murder rule; and (2) robbery with a dangerous weapon. Defendant contends that he is entitled to a new trial as to all charges because the trial court's instructions on the general duties of the jury were erroneous. Defendant specifically attacks his conviction of felony murder on the basis that (1) the State presented insufficient evidence of robbery with a dangerous weapon, and alternatively (2) the trial court erred when it failed to instruct the jury on the lesser included offense of felonious larceny. Defendant also contends that he is entitled to a new trial on the charge of premeditated murder because the trial court failed to instruct the jury on the lesser included offense of voluntary manslaughter. We disagree and conclude that defendant received a fair trial, free of reversible error.

I. Background
At trial, the State presented evidence that tended to show: Defendant and Sherry Nelson ("Sherry" or "the victim") worked together at a Pizza Hut restaurant in Marion, McDowell County. Sherry was a shift manager; defendant, a Mexican national, was a cook. Defendant and Sherry had a history of arguments with one another at work which sometimes degenerated into racial insults directed toward defendant.
On 13 March 2005 Sherry was responsible for making a bank deposit at the end of her shift and defendant was assigned to accompany her to the bank. Defendant and Sherry both clocked out of work at 11:52 p.m. Defendant carried a knife with a nearly 10 inch long blade out of the restaurant.
Defendant and Sherry began arguing on the way to Sherry's car, continuing the argument after they got into her car. While they sat in the car arguing, Sherry told defendant, "it's a shame that you Mexicans didn't drown while you were crossing the border." Sherry then got into the backseat of the car. Defendant picked up the knife, walked around the car and started stabbing her. Sherry fought back, but defendant prevailed. Defendant stabbed Sherry multiple times spattering blood on the trunk and all around the car. Defendant left Sherry hanging out of the backseat of the car, with her feet inside and her head on the ground. Sherry bled to death from her wounds.
Defendant then grabbed the bank deposit and ran away, dropping his Pizza Hut uniform shirt on a nearby street shortly after midnight. Defendant ran to his girlfriend's house and stored his bloody undershirt in a bag in his girlfriend's car.
Defendant was arrested on 14 March 2005. The McDowell County Grand Jury indicted defendant for first degree murder and robbery with a dangerous weapon. Defendant was tried before a jury at the 2 October 2006 Criminal Session of McDowell County Superior Court. On 6 October 2006 defendant was found guilty of first degree murder on the basis of malice, premeditation and deliberation and under the first degree felony murder rule. Defendant was also found guilty of robbery with a dangerous weapon. Upon the jury verdict, judgment was arrested as to the charge of robbery with a dangerous weapon, and defendant was sentenced to life imprisonment without parole for first degree murder. Defendant appeals.

II. General Jury Instructions

A. Duty to Deliberate
Defendant contends that he is entitled to a new trial on all changes because the trial court instructed the jury on the duty to deliberate as follows:
The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It is rarely productive of good for a juror at the outset to make an emphatic expression of his or her opinion of the case or to state how he or she intends to vote.
When one does that at the beginning, a sense of pride may be aroused, and a juror may hesitate to change his or her position, even if shown that it is wrong. Remember that you are not partisans or advocates in this matter, but rather are the judges of the facts.
Defendant urges us to review this instruction de novo. He concedes that no objection was made at trial, but contends that the instruction amounted to plain error.
"A plain error is one so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Robledo, ___ N.C. App. ___, ___, 668 S.E.2d 91, 97 (2008). (citation and quotation marks omitted). Of course, "[a] prerequisite to our engaging in a plain error analysis is the determination that the instruction complained of constitutes error at all." Id. (citation and quotation marks omitted).
In determining whether the trial court erred, "[t]his Court reviews jury instructions only for abuse of discretion. Abuse of discretion means manifestly unsupported by reason or so arbitrary that the instructions could not have been the result of a reasoned decision." State v. Baskin, ___ N.C. App. ___, ___, 660 S.E.2d 566, 573 (2008) (citation, quotation marks and brackets omitted). This includes general instructions. N.C. Gen. Stat. § 15A-1235(b) (2005) ("Before the jury retires for deliberation, the judge may give an instruction which informs the jury [of each member's] duty to consult with [the] []other[s] . . . [but not] surrender his honest conviction . . . ." (Emphasis added.)); See also State v. Adams, 85 N.C. App. 200, 210, 354 S.E.2d 338, 344 (1987) ("However, whether or not to give an instruction pursuant to G.S. 15A-1235(c) is clearly within the sound discretion of the trial judge.").
Defendant concedes that "[i]n State v. Bryant, 282 N.C. 92, 191 S.E.2d 745 (1972), [the North Carolina] Supreme Court approved a jury instruction that was substantially similar to the instruction set forth in this assignment of error." D BR 32 Defendant goes on to contend however, that the instruction permitted in Bryant in 1972 became impermissible when the General Assembly enacted N.C. Gen. Stat. § 15A-1235(b)[1] in 1977. Defendant further cites a case from Maryland, Thompson v. State, where a criminal defendant was granted a new trial on the grounds of a "final test" instruction. 810 A.2d 435, 443 (Md. 2002).
We first note that Thompson is not at all persuasive sub judice because it is completely in apposite. Three sentences in the trial court's instruction quoted above are nearly identical to the first three sentences of the instruction in Thompson. 810 A.2d at 443. However, Thompson held that reversible error arose from the fourth sentence of the instruction: "[t]he final test of the quality of your service will lie in the verdict which you return to the Court, not in the opinions any of you may hold as you retire." Thompson, 810 A.2d at 443. Thompson reasoned that defendant was entitled to a new trial because the fourth sentence of the instruction "logically implies that a `good' juror acquiesces in a verdict rather than adheres to his or her own judgment." Id. However the trial court's charge sub judice does not contain any phrase or sentence remotely resembling the offending fourth sentence in Thompson.
"If the [jury] charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for reversal."State v. Davis, 349 N.C. 1, 58, 506 S.E.2d 455, 487 (1998), cert. denied, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). Furthermore, the statutory general instructions on the duty to deliberate are discretionary, not mandatory. N.C. Gen. Stat. § 15A-1235(b) ("[T]he trial judge may give [a duty to deliberate] instruction[.]" (Emphasis added.)); State v. Sanders, 81 N.C. App.438, 442, 344 S.E.2d 592, 594 ("Mere failure to follow the form instructions of G.S. 15A-1235 is not in itself reversible error."), disc. review denied, 318 N.C. 419, 349 S.E.2d 604 (1986).
While the trial court's general instruction on the duty to deliberate did not quote N. C. Gen. Stat. § 15A-1235(b), its instruction captured the essence of sub-subsection (b)(3), which states "a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous[.]" Furthermore, reading the portion of the instructions assigned as error contextually with the whole, we find that the charge "present[ed] the law fairly and clearly to the jury." Davis, 349 N.C. at 58, 506 S.E.2d at 487. Accordingly, this assignment of error is overruled.

B. Highest Aim of Every Legal Contest
Defendant next argues that it was error for the trial court to omit the following jury instruction after it was requested:
The highest aim of every legal contest is the ascertainment of the truth. Somewhere within the facts of every case, the truth abides, and where truth is, justice steps in garbed in its robes and tips the scales. In this case you have no friend to reward, you have no enemy to punish; you have no anger to appease or sorrow to assuage. Yours is a solemn duty to let your verdict speak the everlasting truth.
(Quoting N.C.P.I.Crim. 101.36.)
The North Carolina Supreme Court addressed this precise question in State v. Beamer:
The defendant argues that when a party requests an instruction that is supported by the evidence, the court must give the jury at least the substance of the instruction. [However, the defendant] does not say what evidence supported th[e] requested instruction [on the highest aim of every legal contest]. [The "highest aim instruction"] is a general statement as to the jury's duties. It is not necessary to include it in a jury charge. This assignment of error is overruled.
339 N.C. 477, 483, 451 S.E.2d 190, 194 (1994) (citation omitted). Beamer controls this case. Accordingly, defendant's assignment of error is overruled.

III. Armed Robbery
Defendant attacks his conviction for armed robbery[2] and the use of armed robbery as a basis for application of the felony murder rule on the grounds that: (1) the trial court failed to dismiss the charges of felony murder and armed robbery when the evidence was insufficient, and (2) the trial court failed to instruct the jury on the lesser included offense of felonious larceny. We disagree as to both.

A. Sufficiency of the Evidence
At trial, defendant failed to move to dismiss the charge of robbery with a dangerous weapon. Defendant concedes that according to the North Carolina Rules of Appellate Procedure, "[a] defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial." N.C.R. App. P. 10(b)(3). However, defendant seeks review by asserting that failure to move for dismissal of the charge of robbery with a dangerous weapon was ineffective assistance of counsel. See State v. Martin, ___ N.C. App. ___, ___, 671 S.E.2d 53, 56-57 (2009) ("[I]n order to consider whether defendant's `counsel's performance fell below an objective standard of reasonableness[,]' or whether `a reasonable probability exists that the trial result would have been different absent the error[,]' we must consider the merits of defendant's issue.").
A defendant must satisfy a two prong test in order to receive a new trial on the basis of an ineffective assistance of counsel claim. "First, he must show that counsel's performance fell below an objective standard of reasonableness. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error." State v. Blakeney, 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000) (citations omitted), cert. denied, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001).
When a defendant asserts an ineffective assistance of counsel claim based on the failure of counsel to move to dismiss a criminal charge on the basis of insufficient evidence, the two prong test collapses into one and "[t]he dispositive issue before this Court becomes whether there is a reasonable probability that the trial court would have granted defendant's motion to dismiss" if it had been raised. State v. Tanner, ___ N.C. App. ___, ___, 666 S.E.2d 845, 849 (2008); See also State v. Ramirez, 156 N.C. App. 249, 257, 576 S.E.2d 714, 720 ("[W]e hold that defendant's counsel did not err by failing to move to dismiss and the trial court did not err in failing to dismiss the charge of intent to kill with regards to the assault upon [the victim]."), disc. review denied, 357 N.C. 255, 583 S.E.2d 286, cert. denied, 540 U.S. 991, 157 L. Ed. 2d 388 (2003).
"In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." Robledo, ___ N.C. App. at ___, 668 S.E.2d at 94 (citation, quotation marks and ellipses omitted). The trial court should deny a motion to dismiss when "view[ing the evidence] in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense." Id. (citation and quotation omitted).
Defendant, citing State v. Powell, 299 N.C. 95, 261 S.E.2d 114 (1980), contends that the trial court would have granted a motion to dismiss if it had been raised. Defendant contends the State failed to present sufficient evidence that the stolen money was taken from the presence of the victim, because the victim was already dead when the taking occurred. We disagree.
The elements of robbery with a dangerous weapon are: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." State v. Hartman, 344 N.C. 445, 473, 476 S.E.2d 328, 344 (1996) (citation and quotation marks omitted), cert. denied, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997). The "`presence' of a victim must be construed broadly." 299 N.C. at 102, 261 S.E.2d at 119. If the State presents evidence that robbery and murder are "committed in one continuous chain of events and constitute contiguous crimes[,]" the evidence is sufficient to go to the jury on robbery even if the victim died before the property was actually taken from the victim. Id.; State v. Fields, 315 N.C. 191, 202, 337 S.E.2d 518, 524-25 (1985); see also State v. Handsome, 300 N.C. 313, 318, 266 S.E.2d 670, 674 (1980) ("The elements of violence and taking were so joined in time and circumstances in one continuous transaction amounting to armed robbery as to be inseparable.").
Powell, the case relied on by defendant, held:
[T]here is no substantial evidence giving rise to the reasonable inference that the defendant took the objects from the victim's presence . . . . The arrangement of the victim's body and the physical evidence indicate she was murdered during an act of rape. We believe that even construing the evidence in a light most favorable to the State, it indicates only that defendant took the objects as an afterthought once the victim had died. While it is true that `presence' of a victim must be construed broadly, and while it is true that frequently armed robbery, rape and murder are committed in one continuous chain of events and constitute contiguous crimes, we do not believe the evidence here supports that view of the facts.
299 N.C. at 102, 261 S.E.2d at 119 (emphasis added).
The case sub judice is more apposite to Fields than Powell. In Fields the State presented evidence that the victim had confronted the defendant with a 12-gauge shotgun as the defendant, armed with a .38-caliber pistol, was taking the property of the victim's neighbor. 315 N.C. at 193, 337 S.E.2d at 520. The defendant then shot the victim dead with his .38-caliber pistol, walked over and took the victim's shotgun. Id. The North Carolina Supreme Court found that the evidence was sufficient to sustain a conviction for armed robbery because "[w]hen . . . the death and the taking are so connected as to form a continuous chain of events, a taking from the body of the dead victim is a taking `from the person.'" 315 N.C. at 202, 337 S.E.2d at 525 (citation omitted).
In the case sub judice, the State presented evidence that defendant took money from Pizza Hut's bank deposit which was with the victim inside her car. Defendant possessed a large knife at the time of the taking which he used to stab the victim several times. The stabbing of the victim and the taking of the money both occurred at the victim's car and the entire event happened within minutes. The victim bled to death from multiple stab wounds; she did not die immediately from an injury to a vital organ.
Viewed in the light most favorable to the State, all these events could "be perceived by the jury as constituting a single transaction[,]" 315 N.C. at 203, 337 S.E.2d at 525, which would have been sufficient reason for the trial court to deny the motion to dismiss. Therefore, we conclude that if a motion for dismissal of the charge "had been made, the court would have rightfully denied [it]. Trial counsels are not required to make useless motions which are without merit, as suggested here." State v. Arsenault, 46 N.C. App. 7, 11, 264 S.E.2d 592, 595 (1980). Accordingly, this assignment of error is overruled.

B. Instruction for Felonious Larceny
Defendant contends that even if the trial court properly submitted the robbery with a dangerous weapon charge to the jury, it was error not to instruct on the lesser included offense of felonious larceny. Defendant did not request an instruction on felonious larceny at trial, but contends that "[d]ue process of law requires instructions on all substantial features of the case [-] matters related to the elements of the charges and to criminal responsibility  where the instructions are supported by the evidence, regardless of any specific request for the instruction." (Emphasis added.) Defendant cites four cases in support of this proposition: Carter v. Kentucky, 450 U.S. 288, 67 L. Ed. 2d 241 (1981); Weiler v. U.S., 323 U.S. 606, 89 L. Ed. 495 (1945); State v. Ward, 300 N.C. 150, 266 S.E.2d 581 (1980); and State v. Simpson, 233 N.C. 438, 64 S.E.2d 568 (1951). However, not one of those cases avails for defendant. Three of the cases directly contradict defendant's proposition; the other based its holding on a statute which was subsequently rewritten.
Carter held that "a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." 450 U.S. at 305, 67 L. Ed. 2d at 254 (emphasis added). Similarly, Weiler held that "[i]t is the duty of the trial judge, when properly requested, to instruct the jury on this aspect . . . ." 323 U.S. at 611, 89 L. Ed. at 499 (emphasis added). Simpson held that the "inadvertence should be called to [the trial judge's]attention at some appropriate time before the case is given to the jury, so as to afford an opportunity of correction. Where this is done and no correction is made, the party is entitled to his exception on appeal." 233 N.C. at 442, 64 S.E.2d at 571 (emphasis added). None of the cases support the proposition that the trial judge is under a duty to instruct the jury regardless of a party's request for the instruction.
The one case cited by defendant that actually supports him, Ward, 300 N.C. at 155, 266 S.E.2d at 585 ("Failure to instruct upon a substantive or `material' feature of the evidence and the law applicable thereto will result in reversible error, even in the absence of a request for such an instruction."), based its holding not on constitutional due process, but on a statute, N.C. Gen. Stat. § 15A-1232. However, N.C. Gen. Stat. § 15A-1232 was wholly rewritten in 1985, after Ward was decided in 1980, in a way that no longer supports defendant's proposition. See State v. Williams, 315 N.C. 310, 323, 338 S.E.2d 75, 83 n.1 (1986) (citing 1985 N.C. Sess. Laws ch. 537, § 1). In sum, none of the cases cited by defendant are sufficient for us to invoke Rule 2[3] of the North Carolina Rules of Appellate Procedure to suspend Rule 10 which states:
A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.
N.C.R. App. P. 10(b)(2). Rule 10 does allow an exception "[i]n criminal cases, [whereby] a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(c)(4). However, defendant did not specifically and distinctly contend for plain error in this appeal. This assignment of error is dismissed. Alternatively, defendant seeks review of this assignment of error where he did not object at trial or contend for plain error by asserting ineffective assistance of counsel. Defendant argues that because the evidence offered by the State is "subject to two competing interpretations[,]" a competent attorney would have requested an instruction on the lesser included offense of felony larceny. Defendant further argues that if the request had been made, there is a reasonable probability that the trial court would have granted the request. Defendant's argument for a jury instruction on felonious larceny is essentially a rehash of his argument for dismissal of the charge of robbery with a dangerous weapon; the result is the same  we disagree.
"[L]arceny is a lesser included offense of armed robbery." State v. White, 322 N.C. 506, 518, 369 S.E.2d 813, 819 (1988).
A trial court must submit to the jury a lesser included offense when and only when there is evidence from which the jury could find that the defendant committed the lesser included offense. When the State's evidence is positive as to each element of the crime charged and there is no conflicting evidence relating to any element, submission of a lesser included offense is not required.
State v. Maness, 321 N.C. 454, 461, 364 S.E.2d 349, 353 (1988) (citations omitted). "A defendant is not entitled to an instruction on a lesser included offense merely because the jury could possibly believe some of the State's evidence but not all of it." State v. Annadale, 329 N.C. 557, 568, 406 S.E.2d 837, 844 (1991).
An instruction on the lesser included offense of larceny must be included upon request when there is a conflict in the evidence as to whether the defendant actually possessed a weapon or took the property from the presence of the victim. White, 322 N.C. at 518, 369 S.E.2d at 819. But cf. State v. Washington, 142 N.C. App. 657, 660, 544 S.E.2d 249, 251 (instruction on larceny properly omitted when there was no "conflict in the evidence as to whether the defendant actually possessed a weapon"), appeal dismissed and disc. review denied, 353 N.C. 532, 550 S.E.2d 165 (2001).
In the case sub judice, the State presented positive evidence that defendant possessed a large knife during the entire sequence of events which led to the taking of money from the Pizza Hut deposit which was with the victim in her car. Defendant points us to no conflicting evidence, contending rather that the evidence is "subject to two competing interpretations[.]" This was not sufficient to necessitate a jury instruction of the lesser included offense of larceny. See Annadale, 329 N.C. at 567-68, 406 S.E.2d at 843-44.
Therefore, we conclude that if a request for an instruction on felony larceny "had been made, the court would have rightfully denied [it]. Trial counsels are not required to make useless motions which are without merit, as suggested here." Arsenault, 46 N.C. App. at 11, 264 S.E.2d at 595. Accordingly, we overrule this assignment of error.

IV. Voluntary Manslaughter
Defendant next assigns error to the trial court's failure to instruct the jury on the lesser included offense of voluntary manslaughter. Defendant contends that Sherry's statement shortly before defendant killed her, "it's a shame that you Mexicans didn't drown while you were crossing the border[,]" amounts to provocation sufficient to have necessitated a jury instruction on voluntary manslaughter. We disagree.
"[V]oluntary manslaughter is a lesser included offense of first-degree murder[.]" State v. Coley, ___ N.C. App. ___, ___, 668 S.E.2d 46, 53 (2008).
In order for a homicide to be reduced from second-degree murder to voluntary manslaughter on the theory that a defendant acted under the influence of sudden passion, the heat of passion suddenly aroused by provocation must be of such nature as the law would deem adequate to temporarily dethrone reason and displace malice. Mere words however abusive are not sufficient provocation to reduce second-degree murder to manslaughter. Legal provocation must be under circumstances amounting to an assault or threatened assault.
State v. Montague, 298 N.C. 752, 756-57, 259 S.E.2d 899, 903 (1979) (citations omitted and emphasis added); State v. Ward, 286 N.C. 304, 313, 210 S.E.2d 407, 414 (1974) ("The law extends its indulgence to a transport of passion justly excited and to acts done before reason has time to subdue it; the law does not indulge revenge or malice, no matter how great the injury or grave the insult which first gave it origin."), death penalty vacated, 428 U.S. 903, 49 L. Ed. 2d 1207 (1976) (citations and quotation marks omitted).
Defendant acknowledges the common law "mere words" rule, but urges us to make an exception for "vile racial insults," contending that "[t]his case involves a highly unusual[4] fact situation because the evidence shows that [the victim] . . . taunted [defendant] with vile racial insults." (Footnote added.) Defendant contends that public policy considerations should persuade us that "vile racial insults" are adequate provocation for the brutal killing of a human being. Defendant reasons that "[t]his sort of disgusting behavior [vile racial insults] is simply unacceptable in today's society and this view is widely held and shared by the vast majority of Americans of all races[,]" and therefore should be deemed sufficient provocation.
We see no new public policy justification to create an exception to the "mere words" rule. We suspect that vile racial insults were just as unacceptable in society among the majority of Americans in 1979 when Montague was decided, 298 N.C. at 756-57, 259 S.E.2d at 903, or even in 1915, where our research found the first statement of the "mere words" rule in North Carolina, State v. Kennedy, 169 N.C. 288, 293, 84 S.E. 515, 518 (1915) ("Words are not a sufficient provocation, but blows are a sufficient provocation to lessen the crime into manslaughter." (Citation and quotation marks omitted.)); see also State v. Estes, 185 N.C. 752, 755, 117 S.E. 581, 583 (1923) ("We have endeavored to consider the appeal entirely in its legal aspect, but we cannot refrain from expressing our unqualified condemnation of the defendant's coarse and obscene language. It was worse than reprehensible; it was utterly without color of excuse or ground of condonation." (Emphasis added.)).
Even if we were satisfied that the victim's racial insults and taunting of defendant were sufficient provocation to require an instruction on voluntary manslaughter, any error which might have resulted from the trial court's omission of the instruction on "voluntary manslaughter was rendered harmless by the jury's verdict finding that defendant had acted with malice, premeditation and deliberation." State v. Jarrett, 137 N.C. App. 256, 263, 527 S.E.2d 693, 698, disc. review denied, 352 N.C. 152, 544 S.E.2d 233 (2000). This assignment of error is overruled.

V. Conclusion
The trial court did not err in the general instructions provided to the jury or in failing to instruct on voluntary manslaughter. Furthermore, the assistance provided by defendant's trial counsel was not ineffective within the meaning of the Sixth Amendment. Defendant received a fair trial, free of reversible or plain error.
NO ERROR.
Judges CALABRIA and ELMORE concur.
Report per Rule 30(e).
NOTES
[1] N.C. Gen. Stat. § 15A-1235(b) reads:

Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:
(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;
(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;
(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and
(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.
N.C. Gen. Stat. § 15A-1235(b) (2005).
[2] "Armed robbery" is a synonym for "robbery with a dangerous weapon." State v. Hartman, 344 N.C. 445, 473, 476 S.E.2d 328, 344 (1996), cert. denied, 520 U.S. 1201, 137 L. Ed. 2d 708 (1997).
[3] prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
N.C.R. App. P. 2.
[4] Unfortunately, we doubt that "vile racial insults" are "highly unusual." See, e.g., State v. Stanley, ___ N.C. App. ___,661 S.E.2d 55 (2008) (unpublished) (A white defendant was convicted of communicating threats when he told his Hispanic neighbor during a heated argument, "son of a bitch, I'll kick your ass." On appeal to this Court, the defendant asserted, "[s]imply put, this entire case boils down to a scene repeated on countless Saturday mornings all across North Carolina . . . it is not criminal." (Emphasis added.))