STATE OF NORTH CAROLINA v. DAVID PAUL SHELMAN

No. COA02-1261

(Filed 5 August 2003)

**1. Evidence— package of methamphetamine—authenticity— chain of custody**

The trial court did not err in a trafficking in methamphetamine by possession and by transportation case by admitting into evidence a package of methamphetamine found in defendant's possession even though defendant contends the State failed to present adequate evidence of authenticity and chain of custody, because: (1) the State presented sufficient evidence on the unity of identity between the methamphetamine delivered to an inspector and that which was admitted at trial; and (2) the issues raised by defendant essentially go to alleged weaknesses in the State's case and do not render the methamphetamine package inadmissible.

**2. Drugs— trafficking in methamphetamine by possession and by transportation—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of trafficking in methamphetamine by possession and by transportation under N.C.G.S. § 90-95(h)(3b), because: (1) knowing possession of any amount of methamphetamine is a felony, and the weight is relevant only as to whether trafficking can properly be charged; (2) the State is not required to prove that defendant had knowledge of the weight or amount of methamphetamine which he knowingly possessed or transported; and (3) the evidence established that several witnesses testified to observing defendant hold and carry a package that contained approximately 1700 grams of methamphetamine, defendant testified he went to his house for the express purpose of retrieving the package, and an inspector testified that defendant admitted knowing the package would contain drugs.

**3. Confessions and Incriminating Statements— trafficking in methamphetamine by possession and by transportation— instruction on confession**

The trial court did not err in a trafficking in methamphetamine by possession and by transportation case by instructing the

jury that there was evidence tending to show defendant had confessed to trafficking in methamphetamine, because: (1) an instruction on confession is appropriate if defendant has admitted taking certain actions that, if true, would constitute a criminal offense; and (2) an inspector's testimony was sufficient to support the trial court's instruction to the jury on confession.

**4. Appeal and Error— preservation of issues—peremptory excusal of black female jurors—insufficient record**

Although defendant contends the trial court erred in a trafficking in methamphetamine by possession and by transportation case by failing to find that defendant presented prima facie evidence of prosecutorial discrimination in jury selection and by failing to require the prosecutor to articulate a race-neutral reason for his peremptory excusal of three black female jurors, the record is insufficient to permit proper appellate review of this issue because: (1) jury selection in this case was not recorded; and (2) the record does not include any other document that purports to reconstruct the relevant details of jury selection.

**5. Sentencing— trafficking in methamphetamine by possession and by transportation—same punishment not required for different defendants**

The trial court did not err in a trafficking in methamphetamine by possession and by transportation case by its sentencing of defendant, because: (1) defendant received the minimum sentence permitted by N.C.G.S. § 90-95(h); and (2) even though defendant received a greater sentence than his codefendant received pursuant to a plea bargain, there is no requirement of law that defendants charged with similar offenses be given the same punishment.

Appeal by defendant from judgment entered 19 February 2002 by Judge Donald M. Jacobs in Wayne County Superior Court. Heard in the Court of Appeals 11 June 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Margaret P. Eagles, for the State.*

*Paul M. Green, for defendant-appellant.*

LEVINSON, Judge.

Defendant (David Shelman) appeals from conviction of trafficking in methamphetamine by possession and by transportation. We conclude the defendant had a fair trial, free of prejudicial error.

The State's evidence tended to show, in relevant part, the following: U.S. Postal Inspector Charles Thompson testified that he was assigned to narcotics investigations and that in April, 2001, he was informed by postal inspectors from Indianapolis, Indiana, that a package of methamphetamine had been intercepted in Indianapolis. The box of methamphetamine was shipped to Inspector Thompson for investigation and delivered to him "under seal" on 30 April 2001. Inspector Thompson met with members of the drug enforcement unit of the Wayne County Sheriff's department, and together they planned a "controlled delivery." The officers conducted a preliminary field test of the box's contents to confirm that it contained a controlled substance, then resealed the package, attaching an electronic device that would emit a signal if someone attempted to break the seal.

The box was addressed to a "David Pool" of "107 Squire Ridge Lane, Dueley, North Carolina," which Inspector Thompson determined was probably a misspelling of "107 Squirrel Ridge Lane" in Dueley. Accordingly, Inspector Thompson drove to defendant's family home at 107 Squirrel Ridge Road, posing as a letter carrier. There he spoke with defendant's sister, Veronica Shelman, who told him that the "David Pool" on the package was likely a misspelling of her brother's name, David Paul Shelman. Veronica signed for the package, and Inspector Thompson left it at the Shelman house.

After delivering the package of methamphetamine, Inspector Thompson and the other officers set up a surveillance team to watch the house. Several hours later, the officers observed defendant arrive at the house in a car driven by another man, Cesar Rivera. Defendant went inside briefly, then reappeared carrying the package. He got back into Rivera's car and the men began driving away. The electronic device attached to the package began beeping almost immediately, and the law enforcement officers converged upon the car. The box of methamphetamine was found on the floor of the car, between the defendant's feet. Defendant was taken out of the car and arrested.

Inspector Thompson interviewed defendant shortly after his arrest. Defendant was advised of his rights and agreed to speak with Inspector Thompson. At trial, Inspector Thompson summarized defendant's statements as follows: Defendant admitted to recent use

of marijuana and methamphetamine. Several weeks before defendant's arrest, Rivera received a package at 107 Squirrel Ridge Road. Defendant's brother later gave him some methamphetamine and told defendant that it came from the first package. Defendant heard Rivera was a methamphetamine dealer, and when Rivera told defendant a week earlier that another package would be arriving at the house, defendant knew the package would contain methamphetamine. Defendant and Rivera worked for the same employer, and on 30 April 2001 defendant made a phone call to his sister Veronica from work. Veronica told defendant that the package had arrived and that she suspected it contained drugs. In response, he told Veronica, "I know." After work, defendant and Rivera drove directly to defendant's house to get the package. Defendant retrieved the package and he and Rivera were on the way to another friend's house when they were stopped by the police.

SBI Agent Linda Farren testified that she subjected the material found in the box to chemical testing and determined that the package contained approximately 1700 grams of methamphetamine. Additionally, DEA Agent Terry Beckstrom testified on rebuttal that he observed Inspector Thompson's interview with defendant, and that Thompson's testimony generally comported with his own recollection of defendant's statements.

Defendant testified that Rivera had lived with his family. He denied knowing the package would contain methamphetamine and denied telling Inspector Thompson that he knew Rivera was a methamphetamine dealer or that he knew the package held drugs.

----

[1] Defendant has raised five issues on appeal. He argues first that the trial court erred by admitting into evidence the package of methamphetamine. Defendant contends the State failed to present adequate evidence of authenticity and chain of custody. We disagree.

According to long-established precedent:

a *two-pronged test* must be satisfied before real evidence is properly received into evidence. The item offered must be identified as being the *same object* involved in the incident and it must be shown that the object has undergone *no material change*. The trial court . . . exercise[s] sound discretion in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in an unchanged condition. . . . Further, any *weak links in a chain*

*of custody relate only to the weight to be given evidence and not to its admissibility.*

*State v. Campbell,* 311 N.C. 386, 388-89, 317 S.E.2d 391, 392 (1984) (emphasis added) (citation omitted). In the instant case, defendant concedes that "the State presented sufficient evidence under this standard to support a finding that the package seized . . . and the controlled substance analyzed by the SBI lab, were the same package and controlled substance as had been received by [Inspector Thompson]."

Defendant, however, contends that in addition to meeting the standard enunciated in *Campbell, id.,* the State also was required to present evidence establishing the history of the drugs and of the package *before* Inspector Thompson received it. In support of this proposition, defendant cites only *State v. Mason,* 144 N.C. App. 20, 550 S.E.2d 10 (2001). However, in *Mason* the State failed to present sufficient evidence that a videotape introduced at trial was the same one that law enforcement officers obtained on the night of a robbery, and that the videotape was unchanged. As defendant acknowledges, in the present case the State presented sufficient evidence on the unity of identity between the methamphetamine delivered to Inspector Thompson and that which was admitted at trial. Therefore, *Mason* is not pertinent to the case *sub judice.*

We conclude that the issues raised by defendant essentially go to alleged weaknesses in the State's case, and do not render the methamphetamine package inadmissible. This assignment of error is overruled.

---

**[2]** Defendant next argues that the evidence was insufficient as a matter of law to sustain his conviction for the charged offenses. We disagree.

Upon a defendant's motion to dismiss for insufficiency of the evidence:

the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator. If substantial evidence of each element is presented, the motion for dismissal is properly denied. 'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'

*State v. Cross*, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997) (quoting *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992)). "It is immaterial whether the substantial evidence is circumstantial or direct, or both." *State v. Stephens*, 244 N.C. 380, 383, 93 S.E.2d 431, 433 (1956). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury[.]" *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988).

In determining whether the State has presented sufficient evidence to support a conviction, "the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002) (citation omitted). Thus, "[c]ontradictions and discrepancies must be resolved in favor of the State, and the defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984).

In the present case, defendant was convicted of trafficking in methamphetamine by possession and by transportation, pursuant to N.C.G.S. § 90-95(h)(3b) (2001). The statute provides in pertinent part that "[a]ny person who . . . transports, or possesses 28 grams or more of methamphetamine . . . shall be guilty of . . . trafficking in methamphetamine[."] To convict a defendant of this offense, the State must prove the defendant (1) knowingly possessed or transported methamphetamine, and (2) that the amount possessed was greater than 28 grams. *See* N.C.G.S. § 90-95(d)(2) (2001); *State v. Rosario*, 93 N.C. App. 627, 634, 379 S.E.2d 434, 438 ("General Statute 90-95(h) provides that possession of specified amounts of controlled substances constitutes the offense of trafficking[.]"), *disc. review denied*, 325 N.C. 275, 384 S.E.2d 527 (1989).

In the instant case, defendant does not dispute that he possessed and transported methamphetamine, or that the amount was well in excess of 28 grams. However, the State also must prove that the possession or transportation of a controlled substance was *knowing. See, e.g., State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985) ("To convict defendant of trafficking in heroin . . . the state was required to prove that defendant *knowingly* possessed the [drugs]".); *State v. Rogers*, 32 N.C. App. 274, 278, 231 S.E.2d 919, 922 (1977)

STATE v. SHELMAN

[159 N.C. App. 300 (2003)]

("Felonious possession of a controlled substance has two essential elements. The substance must be possessed, and the substance must be 'knowingly' possessed."). Defendant herein argues that, notwithstanding evidence that he knew the package would contain methamphetamine, the State also must present evidence of the package's "origin" and must prove defendant knew the weight of methamphetamine in the package, in order to establish that the package was the one "to which defendant's alleged knowledge pertained." Defendant asserts that the "major issue for the jury to decide was whether or not defendant knew that the package contained a trafficking amount of methamphetamine." On this basis, defendant contends that because the State failed to establish defendant knew the weight of the methamphetamine inside the package, the evidence was insufficient to establish that he "knowingly" possessed or transported the drugs. We disagree.

The gravamen of defendant's argument is an assertion that knowledge of the *weight* or *amount* of methamphetamine is an essential element of the offense of trafficking in methamphetamine. Defendant cites no authority for this position, and our own review of the relevant law reveals none. Knowing possession of *any* amount of methamphetamine is a felony, and the weight is relevant only as to whether trafficking can properly be charged. N.C.G.S. § 90-95(b)(1) and (h)(3b) (2001). We discern no legal basis for grafting a new essential element—knowledge of the weight of the drugs—onto the offense of trafficking in methamphetamine. We hold, therefore, that to convict an individual of drug trafficking the State is *not* required to prove that defendant had knowledge of the weight or amount of methamphetamine which he knowingly possessed or transported. Instead, the statute requires only that the defendant knowingly possess or transport the controlled substances; if the amount exceeds 28 grams, then a conviction for trafficking may be obtained. This is in accord will holdings in other jurisdictions. *See, e.g., Ex parte Washington*, 818 So.2d 424 (Ala. 2001), and *State v. Wiley*, 80 S.W.3d 509 (Mo. App. W.D. 2002). We conclude the State's evidence was more than adequate to support defendant's conviction. Evidence established that the package contained approximately 1700 grams of methamphetamine. Several witnesses testified to observing defendant hold and carry the package; indeed, the defendant testified that he went to his house for the express purpose of retrieving the package. In addition, Inspector Thompson testified that defendant admitted knowing the package would contain drugs. Taken together, this evidence handily passes

the threshold required to sustain his conviction. This assignment of error is overruled.

---

**[3]** Defendant argues next that the trial court erroneously instructed the jury that there was evidence tending to show defendant had confessed to trafficking in methamphetamine. We do not agree.

The instruction delivered by the trial court was taken from the North Carolina Pattern Jury Instruction 104.70:

> There is evidence which tends to show that the defendant confessed that he committed the crime charged in this case. If you find that the defendant made that confession then you should consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it.

Jury instructions must be "based upon a state of facts presented by some reasonable view of the evidence." *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973). Thus, this instruction is proper only where evidence is presented that the defendant confessed to the charged offense.

A confession is a "voluntary statement made by one who is [a] defendant in [a] criminal trial at [a] time when he is not testifying in trial and by which he acknowledges certain conduct of his own constituting [a] crime for which he is on trial; a statement which, if true, discloses his guilt of that crime." *State v. Cannon*, 341 N.C. 79, 89, 459 S.E.2d 238, 244-45 (1995) (quoting BLACK'S LAW DICTIONARY 296 (6th ed. 1990)) (upholding trial court's use of the instruction at issue herein). Defendant acknowledges that the State presented evidence that he made certain statements to Inspector Thompson. However, he contends that these statements, even if true, do not constitute a confession to trafficking in methamphetamine.

We again note that conviction of drug trafficking requires proof that the defendant (1) knowingly (2) possessed or transported a given controlled substance, and also that (3) the amount transported was greater than the statutory threshold amount. *See* N.C.G.S. § 90-95(h)(3)(a) (2001); *State v. Acolatse*, 158 N.C. App. 485, 488, 581 S.E.2d 807, 809 (2003) ("To prove the offense of trafficking in cocaine by possession, the State must show 1) knowing possession of cocaine and 2) that the amount possessed was 28 grams or more.") (quoting *State v. White*, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873 (1991)).

Defendant asserts that he did not confess to "the crime charged" because his statements to Inspector Thompson did not include evidence that he knew "the very large amount of drugs" in the package. However, as discussed above, although conviction requires proof that defendant know the *nature* of the substance in his possession, neither the statute nor case law supports defendant's contention that the State also must prove defendant knew the *weight* of the methamphetamine he possessed, or that the drugs weighed more than the threshold amount for trafficking.

Defendant also argues that his statements to Inspector Thompson were not a confession, but merely an "explanation of the circumstances leading up to his arrest[.]" This argument is without merit. Regardless of defendant's characterization of the statements, or his intent in providing the information to Inspector Thompson, an instruction on confession is appropriate if defendant has admitted taking certain actions that, if true, would constitute a criminal offense. *See, e.g., State v. Hamilton*, 298 N.C. 238, 258 S.E.2d 350 (1979) (defendant's statement properly characterized as "confession" where he admitted acts constituting the offenses of rape and burglary, even though defendant stated the acts were committed as part of consensual sexual encounter with eleven year old girl).

Defendant further contends that he cannot be deemed to have confessed to trafficking in methamphetamine because his statements to Inspector Thompson did not indicate that he had "an ownership interest" in the methamphetamine, nor that he had "any power or intent to control its use or disposition, or to sharing any plan or common purpose . . . with [Rivera]." However, the offense of trafficking does not require proof of "an ownership interest" in the drugs. Further, as defendant was not charged with conspiracy, evidence of a "common purpose" or plan with Rivera is not required. Regarding evidence of defendant's "power or intent to control its use or disposition," we note that "evidence which places an accused within close juxtaposition to a narcotic drug under circumstances giving rise to a reasonable inference that he knew of its presence may be sufficient to justify the jury in concluding that it was in his possession." *State v. Weems*, 31 N.C. App. 569, 571, 230 S.E. 2d 193, 194 (1976). In the present case, evidence established that the methamphetamine was delivered to defendant's family home; that he was the one who entered the house and retrieved the package; and that it was seized from between his feet on the floor of the car. Moreover, defendant told Inspector Thompson that he and Rivera had gone to the house to

obtain the package. We conclude that Inspector Thompson's testimony was sufficient to support the trial court's instruction to the jury on confession. This assignment of error is overruled.

---

**[4]** Defendant next argues that the trial court erred by failing to require the prosecutor to articulate a race-neutral reason for his peremptory excusal of three black female jurors.

Racial discrimination in the exercise of peremptory challenges is barred both by the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution, and by Art. I, § 26 of the Constitution of North Carolina. *Batson v. Kentucky*, 476 U.S. 79, 89, 90 L. Ed. 2d 69, 83, (1986). In *Batson*, the United States Supreme Court:

> outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. . . . First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358-59, 114 L. Ed. 2d 395, 405 (1991) (citing *Batson*, 476 U.S. at 96-98, 90 L. Ed. 2d at 87-89). "Although *Batson* is usually applied in the context of racial discrimination, we have extended the *Batson* analysis to the issue of gender discrimination in jury selection." *State v. Wiggins*, 159 N.C. App. 252, 262, 584 S.E.2d 303, 312 (2003) (citing *State v. Call*, 349 N.C. 382, 403, 508 S.E.2d 496, 510 (1998)). In reviewing a court's determination that defendant failed to make out a *prima facie* case, this Court must evaluate an array of relevant factors including:

> (1) the characteristic in question of the defendant, the victim and any key witnesses;
>
> (2) questions and comments made by the prosecutor during jury selection which tend to support or contradict an inference of discrimination based upon the characteristic in question;
>
> (3) the frequent exercise of peremptory challenges to prospective jurors with the characteristic in question that tends to estab-

lish a pattern, or the use of a disproportionate number of peremptory challenges against venire members with the characteristic in question;

(4) whether the State exercised all of its peremptory challenges; and,

(5) the ultimate makeup of the jury in light of the characteristic in question.

*Wiggins* at 263, 584 S.E.2d at 312.

In the present case, the record indicates that after a number of jurors were selected, the defendant made a *Batson* motion alleging that the prosecutor exercised peremptory challenges in a discriminatory manner by excusing black female jurors. There was some discussion between defense counsel and the trial court regarding the race and gender of the jurors already selected. The trial court obtained a stipulation from the defendant that the panel included both white and black males, and white females. The trial court also made a "find[ing] for the record that there were no racial remarks made to the jury by the State in their questions . . . [and] no gender remarks[.]" Thereafter, the trial court ruled that defendant had failed to make out a *prima facie* case of discriminatory exercise of peremptory challenges, and denied defendant's *Batson* motion. Defendant argues on appeal that the trial court erred by failing to find that he presented *prima facie* evidence of prosecutorial discrimination in jury selection, and by failing to require the prosecutor to offer a race and gender neutral reason for his use of peremptory challenges. We conclude, however, that the record is insufficient to permit proper appellate review of this issue.

Jury selection in this case was not recorded. Further, the record does not include any other document that purports to reconstruct the relevant details of jury selection. Without a transcript or some other document setting out pertinent aspects of jury selection, this Court does not have enough information upon which to assess defendant's claim. For example, the record does not indicate the total number of potential jurors questioned by the prosecutor; their race or gender; the number or percent accepted; whether similarly situated prospective jurors received disparate treatment on the basis of race or gender; or whether the remarks to prospective jurors suggested any bias. Nor is the transcript of the trial court's discussion with defense counsel regarding defendant's *Batson* challenge an adequate substitute for these factual details:

[Counsel's statement] cannot serve as a substitute for record proof. . . . We hold that as a rule of practice, counsel who seek to rely upon an alleged impropriety in the jury selection process must provide the reviewing court with the relevant portions of the transcript of the jury voir dire.

*Jackson v. Housing Authority of High Point,* 321 N.C. 584, 586, 364 S.E.2d 416, 417 (1988). *See also State v. Bellamy,* 159 N.C. App. 143, 146, 582 S.E.2d 663, 666 (2003) ("Without an adequate record to fully reconstruct the [jury selection issue], this Court has no ability to determine whether prejudicial error occurred. . . . [T]he record before us is insufficient for appellate review and this assignment of error must be dismissed.") (citing *State v. Moore,* 75 N.C. App. 543, 548, 331 S.E.2d 251, 254-55, *disc. review denied,* 315 N.C. 188, 337 S.E.2d 862 (1985)). We conclude that the record does not reconstruct jury selection in sufficient detail to enable this Court to conduct appellate review of the trial court's determination that defendant failed to make a *prima facie* showing of race and gender discrimination in the prosecutor's exercise of peremptory challenges. Accordingly, this assignment of error is dismissed.

[5] Finally, defendant argues that his sentence was "severe and disproportionate" in violation of his "state and federal constitutional rights." We disagree.

Defendant received the minimum sentence permitted by N.C.G.S. § 90-95(h) (2001), which provides in relevant part that:

(3b) Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine . . . shall be guilty of a felony . . . known as 'trafficking in methamphetamine' . . . and if the quantity of such substance or mixture involved . . . (c)[is] 400 grams or more, such person shall be punished as a Class C felon and shall be sentenced to a minimum term of 225 months and a maximum term of 279 months in the State's prison and shall be fined at least two hundred fifty thousand dollars ($250,000).

N.C.G.S. § 90-95(h)(3b)(c). "It is well settled that the General Assembly and not the judiciary determines the minimum and maximum punishment which may be imposed on those convicted of crimes. The legislature alone can prescribe the punishment for those crimes." *State v. Perry,* 316 N.C. 87, 101, 340 S.E.2d 450, 459 (1986) (rejecting defendant's argument that "imposition of the mandatory

minimum sentence and fine [for drug trafficking] violates . . . the due process and equal protection clauses of the United States Constitution") (citing *State v. Jernigan*, 279 N.C. 556, 184 S.E.2d 259 (1971)). Moreover, this Court is bound by precedent of the North Carolina Supreme Court. *State v. Gillis*, 158 N.C. App. 48, 580 S.E.2d 32 (2003).

Nor did the court err by sentencing defendant to a greater sentence than that received by Rivera pursuant to a plea bargain. *See, e.g., State v. Garris*, 265 N.C. 711, 712, 144 S.E.2d 901, 902 (1965) ("There is no requirement of law that defendants charged with similar offenses be given the same punishment."); *State v. Sligh*, 27 N.C. App. 668, 669, 219 S.E.2d 801, 802 (1975) (court did not err by "imposing a sentence against defendant which was greatly in excess of the sentence given his codefendant . . . under [his] plea bargaining arrangement"). This assignment of error is overruled.

We conclude that defendant received a trial free from prejudicial error.

No error.

Judges MARTIN and TYSON concur.