STATE OF NORTH CAROLINA v. BENSON MAURICE MOORE

No. COA03-1421

(Filed 21 December 2004)

**1. Constitutional Law— effective assistance of counsel—failure to record jury selection**

A defendant did not receive ineffective assistance of counsel where his counsel did not record jury selection, which precluded appeal of a *Batson* issue. The case does not fall into the limited circumstances where prejudicial error may be assumed, and satisfactory, race-neutral reasons were presented for the peremptory challenges.

**2. Appeal and Error— preservation of issues—failure to raise argument at trial**

An equal protection argument to the statutory rape statute (based on the statute not applying to married couples) was barred because it was not raised at trial. There was no reason to invoke N.C.R. App. P. 2 in light of holdings from North Carolina and from the U.S. Supreme Court.

**3. Rape— statutory—age of victim—birthday rule**

There was sufficient evidence of statutory rape where the victim was 2 days older than 15. The plain language of N.C.G.S. § 14-27.7A(a) does not qualify the age of the victim and, under the "birthday rule" in North Carolina, people reach an age on their birthday and remain that age until their next birthday.

Judge WYNN concurs in the result.

Appeal by defendant from judgment dated 11 June 2003 by Judge Judson D. DeRamus, Jr. in Superior Court, Rockingham County. Heard in the Court of Appeals 30 August 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

McGEE, Judge.

Benson Maurice Moore (defendant) was convicted of statutory rape in violation of N.C. Gen. Stat. § 14-27.7A(a) and was sentenced to 300-369 months in prison on 11 June 2003. Defendant appeals.

The State's evidence at trial tended to show that on 27 June 2001, defendant came to S.R.'s home to have her braid his hair. Defendant asked S.R. how old she was and S.R. replied that she had just turned fifteen. Defendant did not believe that S.R. was only fifteen. He also asked S.R. whether she was a virgin and S.R. replied that she was. Both defendant and S.R. agreed they would have sex that night and that defendant would call S.R. to make arrangements to get together.

Defendant called S.R. later that day and said that he would meet her "down the street" at 1:30 a.m. S.R. had to sneak out of her house to meet defendant. Defendant picked S.R. up and drove her to his house. Defendant and S.R. had vaginal intercourse in defendant's bedroom, during which he ejaculated into her. Defendant then drove S.R. home. Defendant and S.R. subsequently saw each other in the neighborhood occasionally and had a few conversations, but they never again had sexual intercourse.

S.R. discovered she was pregnant and delivered a baby on 16 March 2002. The State's evidence also showed that defendant visited

S.R. in the hospital and acknowledged in the presence of others that he thought he was the baby's father. Defendant also submitted to paternity testing, which showed a 99.97 percent probability that defendant was the baby's father. S.R. did not initiate any paternity action against defendant and admitted that she had wanted to have sex with him on 27 June 2001. S.R.'s grandmother, with whom S.R. lived, reported defendant to police.

The State also presented evidence showing that in 1997, when defendant was nineteen, he had sex with a thirteen-year-old girl, M.H., whom he knew to be thirteen at the time. In that case, defendant had admitted to having sex with M.H. and had pled guilty.

In the present case, defendant testified that he never had sex with S.R. and the only time that he could have had sex with her was during a party at her house in July 2001. Defendant testified that he had a lot to drink at that party and did not remember what happened that night. He further testified that he never told anyone or otherwise acknowledged that he was the father of S.R.'s baby.

In his appeal, defendant has only presented arguments in support of assignments of error twenty, thirty-two, thirty-three, and thirty-four. All other assignments of error are deemed to be abandoned pursuant to N.C.R. App. P. 28(b)(6).

I.

[1] Defendant first argues that his attorney rendered ineffective assistance of counsel for failing to request that the jury selection be recorded. Under *Strickland v. Washington*, assistance of counsel is deemed ineffective when both "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). The first part of this standard requires that a defendant show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In other words, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 80 L. Ed. 2d at 693. The second part of the standard "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 80 L. Ed. 2d at 693. The *Strickland* Court elaborated on this point, holding that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 80 L. Ed. 2d at 698.

Defendant argues that his counsel's performance at trial fell below an objective standard of reasonableness because a reasonable attorney would have recorded the entire jury selection process, knowing that many issues might arise during the selection process that would be appealable. Specifically, defendant asserts that his trial counsel's failure to request that the proceedings be recorded precluded defendant from being able to appeal his *Batson* claim. Relying on *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), defendant's counsel took exception to two of the State's peremptory challenges that were used to excuse two African American jurors. While the discussion between the attorneys and the trial court occurred out of the jury's presence and was recorded, the remainder of the selection process was not recorded. Defendant argues that a reasonable attorney would have known that the *Batson* issue could only effectively be reviewed on appeal if the record included specific information. For instance, this Court has held that for a *Batson* claim to be reviewed on appeal, the record should include evidence, such as the following: "the total number of potential jurors questioned by the prosecutor; their race or gender; the number or percent accepted; whether similarly situated prospective jurors received disparate treatment on the basis of race or gender; whether the remarks to prospective jurors suggested any bias." *State v. Shelman*, 159 N.C. App. 300, 310, 584 S.E.2d 88, 96, *disc. review denied*, 357 N.C. 581, 589 S.E.2d 363 (2003). While this failure to request that the selection process be recorded may amount to a deficient performance, we do not agree that it rises to the level of depriving defendant of his Sixth Amendment right to counsel. *See Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693.

Furthermore, defendant does not show that defense counsel's performance at trial prejudiced his defense. Rather than arguing that his defense was prejudiced, defendant merely argues that prejudice should be presumed. Defendant directs us to *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657 (1984), which was decided the same day as *Strickland* and held that there were some cases where the deficiency of the defense counsel's performance was so great that prejudice need not be litigated. *Cronic*, 466 U.S. at 658, 80 L. Ed. 2d at 667. Defendant asserts that prejudice can be presumed in the present case by analogizing his case to *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985 (2000). In *Flores-Ortega*, the United States

Supreme Court held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484, 145 L. Ed. 2d at 1000. Defendant argues that "but for counsel's deficient performance, [defendant] would have appealed" the *Batson* issue, and thus defendant was deprived of an appeal that he would otherwise have taken.

In making this argument, however, defendant disregards the way in which the Supreme Court qualified its holding in *Cronic*. The Supreme Court continued to lay out instances when prejudice might be presumed, and limited the instances to where there is "complete denial of counsel," no "meaningful adversarial testing," or where "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60, 80 L. Ed. 2d at 668. The Supreme Court has since reiterated that these three situations are the few times where prejudice may be presumed rather than proven. *See Bell v. Cone*, 535 U.S. 685, 695-96, 152 L. Ed. 2d 914, 927 (2002).

In *Flores-Ortega*, the Supreme Court held that the defendant was constitutionally deprived of counsel when his counsel failed to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477, 145 L. Ed. 2d at 994-95. The Supreme Court held that the failure to file a notice of appeal was more than a denial of counsel at a critical stage in the trial; rather, it was a "more serious denial of the entire judicial proceeding itself." *Id.* at 483, 145 L. Ed. 2d at 999. Defendant in our case wants us to consider the failure to record the jury selection to be on par with the failure to file notice of appeal. However, unlike in *Flores-Ortega*, defendant is not deprived of an entire judicial proceeding, only an issue on appeal. Defendant is not deprived of counsel at any critical stage of the proceedings; nor does he fall into any of the other limited circumstances in which prejudice might be presumed. Defendant must thus show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698.

As mentioned before, defendant does not argue that his defense was prejudiced and we do not find anything in the record on appeal to indicate that the failure to record the jury selection process denied defendant a fair trial. To make a *Batson* claim, a defendant must

establish a prima facie case of purposeful racial discrimination. *Batson*, 476 U.S. at 93, 90 L. Ed. 2d at 85. In the present case, the trial court ruled that defendant had not made a prima facie case on the *Batson* issue. On appeal, we will only overturn such a determination by the trial court if it is clearly erroneous. *State v. White*, 349 N.C. 535, 549, 508 S.E.2d 253, 262 (1998) (citing *State v. Fletcher*, 348 N.C. 292, 313, 500 S.E.2d 668, 680 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 113 (1999)), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). In the present case, we find no error.

When determining whether a defendant has made a prima facie case of discrimination, a trial court should consider all relevant circumstances, including "defendant's race, the victim's race, the race of key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, a pattern of strikes against minorities, or the State's acceptance rate of prospective minority jurors." *White*, 349 N.C. at 548, 508 S.E.2d at 262. Even though defendant argues that most of this information is absent from the record because defense counsel did not request that the jury selection be recorded, there is sufficient evidence in the transcript to show that the trial court's decision was not clearly erroneous. Defendant was African American, as was S.R. and S.R.'s grandmother, the State's prosecuting witness. There were four African American jurors in the potential pool of jurors and only two were dismissed peremptorily. Moreover, the State voluntarily provided race-neutral explanations for excusing two African American jurors, even though it was not required to do so. *See Purkett v. Elem*, 514 U.S. 765, 767, 131 L. Ed. 2d 834, 839 (1995) (explaining that if the defendant makes a prima facie *Batson* claim, the burden shifts to the state to give a race-neutral justification for dismissing the juror). Specifically, the State said that one of the jurors excused was "the only juror of the 13 potential jurors that indicated that she knew the defendant," and the other "was the only juror of the 13 questioned who indicated that he had a prior criminal history." Both of these reasons are satisfactory race-neutral explanations for excusing jurors peremptorily. *See State v. Porter*, 326 N.C. 489, 499, 391 S.E.2d 144, 151 (1990) (stating that courts have properly allowed venire persons to be dismissed when they have criminal records or where they have known the defendant, counsel, or a relative of either). These explanations are facially based on something other than race and as the Supreme Court has held, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360, 114 L. Ed. 2d 395, 406 (1991). Thus,

there is nothing in the record that suggests that defendant was harmed by any deficiency in his defense counsel's performance at trial, and we hold that defendant's assignment of error on this issue is without merit.

## II.

**[2]** Defendant next argues that he was denied equal protection of the law because N.C. Gen. Stat. § 14-27.7A[1] arbitrarily distinguishes between married and unmarried persons and is thus unconstitutional. N.C. Gen. Stat. § 14-27.7A(a) (2003) states:

[a] defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person.

Defendant argues that he, a twenty-three-year-old, was punished for allegedly having sexual intercourse with fifteen-year-old S.R., because he and S.R. were not married, and that had they been married, he would have been exempt from this law. This argument, however, is procedurally barred because the statutory rape charge was not challenged on equal protection grounds at trial. *See* N.C.R. App. P. 10(b)(1). Defendant acknowledges that defense counsel did not present this issue to the trial court. Nevertheless, he argues that we should review this claim pursuant to N.C.R. App. P. 2, which states that:

[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court in the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

In support of his argument that this constitutional question "is a significant issue in the public interest," defendant makes some of the same arguments previously addressed in this Court. Specifically, defendant argues that the United States Supreme Court's decision in *Lawrence v. Texas* provided that sexual relations between married

---

1. Defendant's brief occasionally refers to N.C.G.S. § 14-27A, but no such statute exists. Since defendant was convicted under N.C.G.S. § 14-27.7A and since error was assigned under this statute, we assume that defendant intended to refer to § 14-27.7A.

persons are not entitled to greater protection than relations between unmarried persons. *See Lawrence*, 539 U.S. 558, 156 L. Ed. 2d 508 (2003) (extending the privacy right set forth in *Griswold v. Connecticut*, 381 U.S. 479, 14 L. Ed. 2d 510 (1965), to unmarried persons). Defendant argues that *Lawrence* thus nullifies our decision in *State v. Howard* in which we held that the marriage exception from criminal liability in our statutory rape statute, N.C.G.S. § 14-27.7A, was constitutional. *Howard*, 158 N.C. App. 226, 232, 580 S.E.2d·725, 730, *disc. review denied*, 357 N.C. 465, 586 S.E.2d 460 (2003). We considered this same argument in *State v. Clark* and held that *Lawrence* did not affect *Howard*, because the *Lawrence* Court expressly held that it was not applying its decision to minors. *Clark*, 161 N.C. App. 316, 320-21, 588 S.E.2d 66, 68-69 (2003) (citing *Lawrence*, 539 U.S. at 578, 156 L. Ed. 2d at 525), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 81 (2004). *Clark* controls our present case.

Defendant, however, urges us to examine the issues addressed in *Clark* in light of *Limon v. Kansas*, 539 U.S. 955, .156 L. Ed. 2d 652 (2003). *Limon* involved greater punishment for same-sex statutory rape offenses than for similar offenses between members of the opposite sex. The United States Supreme Court remanded *Limon* the day after *Lawrence* was decided. Defendant argues that by remanding *Limon*, the Supreme Court indicated its willingness to extend *Lawrence* to minors. We disagree.

We first note, however, that even were we to find that *Clark* was no longer controlling, we cannot overrule other decisions of our Court. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989) (holding that once a panel of the Court of Appeals has ruled on an issue, another panel is bound by that decision until the issue is overturned by a higher court).

Moreover, we do not see how *Limon* changes our decision in *Clark*. As the State points out, *Limon* was remanded because it was based on *Bowers v. Hardwick*, 478 U.S. 186, 92 L. Ed. 2d 140 (1986), which was overturned by *Lawrence*. *See Lawrence*, 539 U.S. at 578, 156 L. Ed. 2d at 525. On remand, the Kansas Court of Appeals decided that, in light of *Lawrence*, disparate punishment for the same crime (statutory rape) between same-sex offenders and different sex offenders was constitutional precisely because minors were involved. *See State v. Limon*, 32 Kan. App. 2d 369, 375, 83 P.3d 229, 235, *cert. granted*, —— Kan. ——, —— P.3d —— (2004). This underlying rationale of the Kansas court's decision is consistent with the rationale under-

lying our statutory rape law, which has the purpose of protecting minors who are not capable of effectively consenting. *See State v. Anthony*, 351 N.C. 611, 618, 528 S.E.2d 321, 324 (2000). We thus do not see a reason to suspend N.C.R. App. P. 10(b)(1) to consider defendant's argument regarding the constitutionality of N.C.G.S. § 14-27.7A. Accordingly, we dismiss this assignment of error.

### III.

[3] Finally, in a supplemental brief allowed by this Court, defendant contends that the trial court erred when it denied defendant's motion to dismiss for insufficient evidence where the evidence showed that S.R. was two days older than fifteen years old. Defendant cites *State v. McGaha*, 306 N.C. 699, 295 S.E.2d 449 (1982), which arrested the judgment of a defendant who was indicted under N.C. Gen. Stat. § 14-27.4 because the victim, who was 12 years and eight months old, was not "12 years or less" as required by the statute. *McGaha*, 306 N.C. at 701, 295 S.E.2d at 450. Defendant thus argues that "[b]ecause [S.R.] was fifteen years and two days old at the time she and [defendant] allegedly had sexual intercourse, she was 'something more than' fifteen years old at the time of the offense." Defendant continues that "[u]nder *McGaha*, the language of G.S. § 14-27.7A[(a)] must be construed so as not to include victims who are even one day beyond their [fifteenth] birthdays." Defendant argues that for these reasons his conviction should be vacated. We disagree and reject this argument.

We recently addressed a similar argument pertaining to the language of N.C.G.S. § 14-27.7A(a), and held that "the fair meaning of '15 years old,' in accord with the manifest intent of the legislature when viewed in the context of the historical development of this area of law, includes children during their fifteenth year, until they have reached their sixteenth birthday." *State v. Roberts*, 166 N.C. App. 649, 651, 603 S.E.2d 373, 375 (2004). We reiterate that in interpreting a statute, we first look to understand the legislative intent behind the statute by examining the plain language of the ·statute. *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). Here, the plain language of the statute is clear and unambiguous. Unlike the instances cited by defendant, N.C.G.S. § 14-27.7A(a) specifically refers to a "person who *is* 13, 14, or 15 years old[.]" (emphasis added). It does not qualify the age of the person with any of the following phrases: "older," "younger," "more," or "less." *See Roberts*, 166 N.C. App. at 652, 603 S.E.2d at 375 (stating that the "language adopted by the legislature in N.C. Gen.

Stat. § 14-27.7A lacks [the] modifiers" that appear in N.C.G.S. § 14-27.4). In other words, the minor described in N.C.G.S. § 14-27.7A must be the age of thirteen, fourteen or fifteen—not be more or less than these ages.

Moreover, as we wrote in *Roberts*, our interpretation of N.C.G.S. § 14-27.7A is consistent with our method for determining how old someone *is*, namely the "birthday rule." *Roberts*, 166 N.C. App. at 652, 603 S.E.2d at 375 (citing *In re Robinson*, 120 N.C. App. 874, 876-77, 464 S.E.2d 86, 88 (1995)). Under the "birthday rule," a person reaches a certain age on her birthday and remains that age until her next birthday. *Robinson*, 120 N.C. App. at 877, 464 S.E.2d at 88. Applying this rule, S.R. reached the age of fifteen on 25 June 2001, which was her birthday (anniversary of her birth) and remained fifteen until 25 June 2002. Thus, she was fifteen for the purposes of N.C.G.S. § 14-27.7A on 27 June 2001 when she and defendant had sexual intercourse. We hold that the trial court properly denied defendant's motion to dismiss on this issue.

No error.

Chief Judge MARTIN concurs.

Judge WYNN concurs in result.