STATE OF NORTH CAROLINA
v.
HOWARD DANIEL HILTON
No. COA03-305
North Carolina Court of Appeals
Filed July 20, 2004
This case not for publication
Cabarrus County, No. 01 CRS 17471; 17473; 22539.
Roy Cooper, Attorney General, by Melissa L. Trippe, Special Deputy Attorney General, for the State.
Reita P. Pendry for defendant-appellant.
STEELMAN, Judge.
Defendant, Howard Daniel Hilton, appeals convictions for possession of cocaine and conspiring to sell and deliver cocaine. For the reasons discussed herein, we find no error.
The evidence presented at trial tended to show that Dustin Mouton, in collaboration with local law enforcement, attempted to purchase drugs from defendant. Mouton asked defendant to sell him two and one half ounces of cocaine, and defendant agreed to provide the cocaine in exchange for $3,000.00. The sale was to take place on the afternoon of 29 May 2001. Mouton contacted the Cabarrus County Sheriff's Department to inform them of the agreement, and they provided money for Mouton to purchase the cocaine. On 29 May 2001, defendant contacted Billy Stanback, whom defendant knew as "Dune," about supplying defendant with two and one half ounces of cocaine. Defendant agreed to pay Stanback $2,850.00 for the cocaine. Stanback obtained the cocaine from Jesse Walker and promised to pay Walker $2,500.00 after he sold the cocaine to defendant.
After Stanback obtained the cocaine, he and another man picked defendant up at defendant's residence. They drove to a parking lot at Auto Zone and Bi-Lo on Highway 29 in Concord to meet Mouton. They drove around the parking lot to check for police officers. Then, Stanback threw the cocaine out the car window in the vicinity of some bushes. They then picked up Mouton, and defendant retrieved the cocaine and conducted the drug transaction in the back seat of Stanback's car while Stanback drove around the parking lot.
Mouton and the defendant had an argument over who should count the money. Instead of wearing a wire, the police had Mouton leave his cell phone on so they could monitor the transaction. The Sheriff's Department instructed Mouton to count the money aloud as he paid for the cocaine as a signal to the detectives that Mouton had seen the cocaine. When the detectives heard Mouton counting the money, they went to Stanback's car, arrested everyone inside the car, and retrieved the cocaine and money. The drugs were sent to the State Bureau of Investigation for analysis and confirmed to be cocaine base, weighing 75.2 grams. Defendant was indicted for trafficking in cocaine by possession, a class G felony under N.C. Gen. Stat. § 90-95(h)(3)(a), trafficking in cocaine by transportation, also a class G felony under N.C. Gen. Stat. § 90-95(h)(3)(a), conspiracy to sell and deliver cocaine, and being an habitual felon. On the trafficking in cocaine by possession charge, the jury found defendant guilty of the lesser included offense of felonious possession of cocaine. The jury also found defendant guilty of felonious conspiracy to sell and deliver cocaine. Defendant was found not guilty on the charge of trafficking in cocaine by transportation. Following the return of the jury's verdict, defendant pled guilty to being an habitual felon. Defendant was sentenced to two consecutive active sentences having a minimum term of 107 months and a maximum term of 138 months. Defendant appeals.
In his first assignment of error, defendant argues the trial court erred in denying his motion to dismiss the charge of trafficking by possession at the close of the state's evidence and again at the close of all the evidence. We disagree.
In considering a motion to dismiss, the only issue for the trial court is whether there is substantial evidence of each essential element of the charged offense and of the defendant being the perpetrator. State v. Crawford, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. State v. Vick, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). The court must consider the evidence in the light most favorable tothe State and give the State the benefit of every reasonable inference from that evidence. State v. Jaynes, 342 N.C. 249, 274, 464 S.E.2d 448, 463 (1995). Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. State v. Gibson, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995).
To obtain a conviction for the class G felony of trafficking in cocaine by possession, the State must prove: (1) defendant knowingly possessed cocaine, and (2) the cocaine weighed 28 grams or more and less than 200 grams. State v. White, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873-74 (1991); see also N.C. Gen. Stat. § 90-95(h)(3) (2003). A defendant has possession of cocaine when "he has both the power and intent to control its disposition or use." State v. Harvey, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972).
In this case, the State met its burden of proving beyond a reasonable doubt that defendant had both the power and intent to control the disposition of the cocaine. Defendant was authorized by Stanback, who provided him with the cocaine, to make the sale to Mouton. He was to receive $3,000.00 for the cocaine and was to pay $2,850.00 to Stanback. Further, after Stanback and defendant picked up Mouton, defendant retrieved the cocaine from the bushes and delivered it to Mouton to consummate the transaction. Defendant's power and intent to control the disposition of the cocaine is evident in his handing it over to Mouton in exchange for money. Thus, there was substantial evidence from which a jurycould reasonably find defendant possessed the cocaine. This assignment of error is without merit.
Defendant failed to preserve his remaining assignments of error for appellate review because he did not object to these issues at trial. See N.C.R. App. Pro. 10(b)(1) (2003) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . ."). Thus, this Court is limited to a plain error review of these issues. State v. Turner, 98 N.C. App. 442, 447, 391 S.E.2d 524, 527 (1990). To prevail on plain error review, a defendant must show that (i) a different result probably would have been reached but for the error, or (ii) the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial. State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). This Court can reverse for plain error only in exceptional cases. State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).
In his second assignment of error, defendant argues the trial court committed plain error in instructing the jury on the charge of conspiracy. We disagree.
A conspiracy is an unlawful agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. State v. Horton, 275 N.C. 651, 656, 170 S.E.2d 466, 469 (1969), cert. denied, 398 U.S. 959, 26 L. Ed. 2d 545, 90 S. Ct. 2175 (1970). For a conspiracy to occur, there must be a "union of wills" between two or more persons. Id. at 657, 170 S.E.2d at 470. A conspiracy cannot occur between a defendant andone who feigns acquiescence in a crime. State v. Wilkins, 34 N.C. App. 392, 400, 238 S.E.2d 659, 665, cert. denied, 294 N.C. 187, 241 S.E.2d 516 (1977). "If an undercover agent acts in conjunction with more than one person to violate a law, however, his participation will not preclude a conviction of the others for a conspiracy among themselves." Id.
On plain error review of a jury instruction, this Court "must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." Odom, 307 N.C. at 661, 300 S.E.2d at 379. This Court may only reverse for plain error if the jury would probably have reached a different verdict absent the erroneous instruction. Id. at 660, 300 S.E.2d at 378.
The court gave the following instructions to the jury regarding the conspiracy charge against defendant:
So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant agreed with Dustin Mouton and others to commit the crime of selling or delivery of cocaine, and that the defendant, Dustin Mouton, and others intended at the time the agreement was made that it would be carried out, it would be your duty to return a verdict of guilty as charged (emphasis added).
Defendant argues that because Mouton was working with law enforcement, this instruction was plain error. However, a review of the whole record in this case shows that an agreement to sell drugs to Mouton existed between defendant and Stanback. The State's evidence indicated that after defendant agreed to sell drugs to Mouton, he contacted Stanback, who arranged to obtain twoand one half ounces of cocaine from Walker. These men agreed that after defendant received $3,000.00 for the cocaine from Mouton, defendant would pay Stanback $2,850.00, and Stanback would pay Walker $2,500.00. On the day of the sale, Stanback got the cocaine from Walker and drove with defendant to the location where the sale was to take place. Together, defendant and Stanback picked up Mouton and attempted to sell him the cocaine. These facts are sufficient for a jury to find a conspiracy to sell and deliver cocaine between Stanback and defendant. Thus, there was no plain error in the court's instructions to the jury.
In his third assignment of error, defendant argues that the trial court committed plain error regarding the testimony of Dustin Mouton. Defendant contends that the trial court made three errors regarding Mouton's testimony: (1) by suggesting that the State immunize Mouton; (2) by allowing the State to ask Mouton if he had been threatened or promised something in exchange for his testimony; and (3) by failing to instruct the jury that Mouton had been granted immunity by the State. We disagree.
When the State questioned Mouton about defendant, Mouton invoked his Fifth Amendment rights against self-incrimination. Outside the presence of the jury, the trial court questioned Mouton about whether he had been granted immunity in exchange for testifying against defendant. Both the State and Mouton acknowledged that Mouton had not been, and would not be, charged for any events that occurred on 29 May 2001. The trial judge thenordered Mouton to answer the State's questions regarding his interaction with defendant.
Defendant argues that the trial court's comments and questions regarding Mouton's immunity run afoul of the requirement of absolute judicial impartiality. See State v. Smith, 328 N.C. 99, 133, 400 S.E.2d 712, 731 (1991). However, the trial court's conversation with Mouton occurred entirely outside the presence of the jury. Therefore, it would be impossible for the jury to have been prejudiced by the questions asked by the court. See State v. Cummings, 352 N.C. 600, 619, 536 S.E.2d 36, 51 (2000) (declining to extend application of the plain error doctrine to statements made by trial counsel, outside the presence of the jury, during witness voir dire), cert. denied, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). Moreover, the jury knew Mouton was working for the police, based upon the testimony of Detective Tim Parker. Knowing Mouton participated in the transaction at the request of the police, the jury would not likely believe Mouton would later be charged in connection with that transaction. Thus, defendant has not shown that the jury would have probably reached a different outcome absent the court's actions. This assignment of error is without merit.
Defendant also contends that the trial court should have intervened when Mouton denied that he had been threatened or that promises had been made to him in exchange for his testimony against defendant. Assuming arguendo that the trial court should have intervened, there is other evidence in the record from which thejury could convict defendant. For instance, Stanback also testified regarding the events leading up to the sale on 29 May 2001. The evidence from Stanback's testimony was sufficient for a jury to convict defendant of conspiracy and trafficking in cocaine. In light of the other ample evidence against him, defendant has failed to make the necessary showing that he was prejudiced by Mouton's testimony. This assignment of error is without merit.
Defendant also contends that the trial court committed plain error in not instructing the jury that Mouton had been granted immunity.
There are two distinct types of immunity set forth in the provisions of Article 61 of Chapter 15A of the General Statutes. The first type, a formal grant of immunity, is found in N.C. Gen. Stat. § 15A-1052 (2003). Under this statute, the court issues a grant of immunity upon application of the district attorney. N.C. Gen. Stat. § 15A-1052(a). This application may only be made after the district attorney informs the attorney general "of the circumstances and his intent to make an application." N.C. Gen. Stat. § 15A-1052(b). Subsection (c) of N.C. Gen. Stat. § 15A-1052 requires the presiding judge to inform the jury of the grant of immunity prior to the testimony of the witness, and to instruct the jury "as in the case of interested witnesses." N.C. Gen. Stat. § 15A-1052(c).
The second type of immunity, known as "quasi-immunity," is found in N.C. Gen. Stat. § 15A-1054 (2003). Under this statute, there is no formal application for immunity or notice requirement. The district attorney is vested with the discretion to agree to charge reductions and sentence concessions. N.C. Gen. Stat. § 15A-1054(a). The district attorney must provide notice of the arrangement to counsel representing the defendant against whom the testimony is offered. N.C. Gen. Stat. § 15A-1054(c). Upon motion of the defendant asserting surprise, the court must grant a recess. Id.
In this case, there was no formal application for immunity made to the court, nor was there any notice given to the attorney general. Upon being called to the witness stand, the witness Mouton, after stating his name, pled the Fifth Amendment of the United States Constitution in response to the next question from the assistant district attorney. The presiding judge excused the jury from the courtroom and conducted a hearing concerning Mouton's testimony. The court ascertained that Mouton had no pending charges. The court then asked the assistant district attorney whether Mouton would be charged with any crime relating to the events giving rise to the charges against defendant. The court was advised that the State would not bring such charges. The court then instructed Mouton that he would be required to answer the State's questions. This was a grant of quasi-immunity by the district attorney under N.C. Gen. Stat. § 15A-1054.
Where there is no evidence of a formal grant of immunity, the provisions of N.C. Gen. Stat. § 15A-1052(c) are not applicable. State v. Maynard, 65 N.C. App. 81, 84, 308 S.E.2d 665, 668 (1983), disc. rev. denied, 310 N.C. 628, 315 S.E. 2d 694 (1984). Sincedefendant and his attorney were present when the grant of immunity was made, the notice requirements of N.C. Gen. Stat. § 15A-1054 were complied with. Defendant made no motion for a recess upon learning of the grant of immunity.
The trial court did not commit plain error in failing to comply with the provisions of N.C. Gen. Stat. § 15A-1052(c). This assignment of error is without merit.
In his final assignment of error, defendant argues the trial court committed plain error in allowing the State to examine Stanback about his guilty plea arising from the same incident for which defendant was charged. We disagree.
It would clearly be improper for the State to present the mere fact of Stanback's plea to the jury without calling Stanback as a witness. State v. Cameron, 284 N.C. 165, 168, 200 S.E.2d 186, 189 (1973), cert. denied, 418 U.S. 905, 41 L.Ed. 2d 1153 (1974). The basis for this holding in Cameron was twofold: (1) evidence competent against one person is not necessarily competent against another charged with the same crime; and (2) it would "deprive a defendant of his constitutional rights of confrontation and cross-fexamination." Id.
In Cameron, our Supreme Court held that since the co-defendant testified, there was no deprivation of the constitutional right to confront and cross-examine the witness. Id. at 170, 200 S.E.2d at 190. The Court noted that the admission of evidence that the witness intended to plead guilty at a future date was equivalent to evidence that a co-participant had in fact entered a guilty plea. Id. at 168, 200 S.E.2d at 189. The Court held that "in view of the witness' sworn testimony, which amounted to a detailed and unequivocal admission of his guilt, we are unable to perceive how a statement of his intention to confirm this sworn, public confession by a subsequent plea of guilty could be prejudicial error." Id. at 170, 200 S.E.2d at 190.
In the instant case, Stanback testified in open court and was subjected to cross-examination by defense counsel. Further, even assuming arguendo that the trial court erred in allowing the State to elicit testimony of Stanback's guilty plea, it did not rise to the level of plain error. In light of Stanback's detailed testimony about the events of 29 May 2001, the admission of his guilty plea would not have resulted in a different verdict in the trial. Nor can it be said that the error was so fundamental as to result in a miscarriage of justice or deprive defendant of a fair trial. This assignment of error is without merit.
Finally, we note that one of the underlying felonies supporting defendant's habitual felon status in case 01 CRS 22539 was possession of cocaine and that one of the three felonies constituting defendant's status as a habitual felon was possession of cocaine. In State v. Jones, our Supreme Court held that possession of cocaine was a felony. __ N.C. __, __ S.E.2d __ (2004). Possession of cocaine was a proper underlying felony in one of the habitual felon judgments and was properly used as one of the three prior felonies constituting habitual felon status in each of the judgments.
NO ERROR.
Judges HUDSON and TYSON concur.
Report per Rule 30(e).